Good morning, Your Honors. I'd like to reserve two minutes for rebuttal, if I remember. All right. This case is about how the application of California Evidence against Section 1108, enacted after the commission of this offense, transformed what otherwise would have been an ordinary whodunit several months earlier into a saga of appellants' violent sexual past, relegating the true facts of the case into the background, especially unusual in that the sexually violent past had nothing to do with the homicide, was unrelated to it in any respect. Among the questions presented in the split not the limiting instructions that the priors pertain only to an accompanying count or population count were sufficient. In light of the Court's further erroneous giving of a rape-murder instruction, deemed insufficient by the Court of Appeal and the State, as well as being unnoticed, and also in light of the prosecutor's argument in which he argued to the jury that the jury should, in fact, consider the sexual priors on the issue of the homicide. There's also an ex post facto issue which I won't address because it may not be within the certificate of appealability. As the Court knows, there's some dispute over the interpretation of that. That's the particular issue. While I do think the Court should expand it, I don't believe the Schroeder v. Sullivan case was adequately decided. I won't argue it here in light of the fact that it may not be within the Court's current certificate. With regard to all the other issues, however, the ramifications of the introduction of the prior crimes evidence, I would submit, however, they must all be considered for a fair understanding of how the prior convictions, being admitted in the manner that they were, violated Mr. Flores's due process right to a fair trial. The issue here is not, I repeat not, whether sexual propensity evidence violates the Federal Constitution, as Appellee attempts to portray the issue. That's an issue that, despite decades and decades of Supreme Court authority suggesting that it does, in Estell v. McGuire, the Supreme Court did explicitly rule that that was not before the Court. But that's not the issue that's being presented here. The issue here is whether or not irrelevant evidence, the issue that was irrelevant to the issue in the homicide, did Michael Flores kill Michelle Redmond, so infect the trial process so as to prevent a fair trial to Mr. Flores on that issue. And further, if I were to ---- You get to the generality very quickly, but maybe you could come to the specific. As I understand it, what we have to identify here is whether the ---- what the Court did is in violation of the law set by the Supreme Court of the United States. And what do we ---- how do we handle the Estell case? This very issue, because they held it in advance and didn't reach it, indicates, doesn't it, that the State court is not violating a law set by the Supreme Court? The Estell case merely indicated that the narrow issue of sexual propensity evidence or propensity evidence in general may or may not violate Federal Constitution, was not to be decided. It did not affect the basic rule, and Estell actually has language in it, which is no different than a Ninth Circuit opinion, that where prior evidence is so unrelated to the fact-finding process that it violates due process. That's the problem I have with your argument. You just move aside the entire analysis that we ordinarily use and skip over to some vague due process. Now, what case do you rely upon that we can skip over what has been our task before of just making a comparison of whether the Supreme Court has actually foreclosed the State from ruling on that issue? Estell itself, Your Honor, indicates that where prior crimes evidence is so unrelated to the facts and issues before the case that it violates due process is the Supreme Court authority. That's commented on in Estell. The difference is that sexual propensity evidence, propensity evidence in general, can be relevant. The issue is not whether or not, if it's relevant, it violates due process. It may well be relevant in an appropriate case. The point is here, the prior crimes evidence is irrelevant to the issue of the homo of who committed the homicides. We're not talking about an issue of whether or not the propensity evidence is improper per se, but whether or not any time other kinds of evidence. Do you concede that the Supreme Court of the State of California or any State can hold that they can have propensity evidence and not violate the law of the United  Do you concede that issue? Not if the propensity evidence is irrelevant to the facts before the case and violates the right to a due trial. I did not say that's on there. Well, what about the Alberni case? We're making it more specific. In the Ninth Circuit, we looked at this precise Alberni. Yeah. Again, Alberni, both Alberni and in the Supreme Court case, the prior crimes evidence was relevant to the issue. That is that it pertained to the issue before the court in those two cases where the prior crimes evidence was relevant to whether or not there was an accident or whether or not the person had committed a prior child abuse offense. It was propensity evidence, but it was in fact relevant because it showed prior behavior that pertained to the same issue before the court. The difference in this case is that the murder was not a sexually motivated murder. It was the prior crimes evidence had no bearing on any issue in the case. Propensity evidence can be relevant. I mean, there's no question. I mean, the Supreme Court's always argued in the past or commented that it's too relevant, it's too prejudicial, but being too prejudicial can be proven possibly by means that some people may construe as unfair. But propensity evidence may be relevant because it may show the person has a propensity to commit that kind of crime that he's charged with. The difference here is the propensity evidence of sexual misconduct had nothing to do with the murder. It was not a sexually motivated murder. The sex allegations had been dismissed by the magistrate, not found by the grand jury, unnoticed by the prosecutor, and finally in the trial court, after it had been dismissed several times, was allowed to argue a rape-murder theory to the jury, even though there was no evidence in the case of sexual motivation. That's the difference. The propensity evidence here had no relevance to the issue at trial. That's a different situation. Kagan. You're saying that he argued rape-murder, they argued rape-murder here? At the jury trial, rape-murder was one of the theories given the jury, which was found to be insufficient by the court of appeal, just like it was found insufficient by the magistrate diploma hearing, just like the grand jury didn't indict Mr. Flores for that. Nevertheless, the judge allowed a rape-murder theory to be presented to the jury, which the prosecutor not only argued, but then after he argued it, he then utilized the other crimes evidence to call Mr. Flores a classic rapist. His wires are crossed, violence and sex. He used the term classic rapist, lustful disposition. This was on the issue of the murder case, using the prior evidence to suggest a theory of guilt for which there was insufficient evidence. That's the difference here. That's why the trial was unfair, not because the propensity evidence was too relevant. That's always been the argument in the past. It's too relevant, it's too prejudicial, but sometimes it's relevant. I mean, that's the bottom line. And States can enact statutes that make propensity evidence, where it's relevant, admissible, contrary to many decades of jurisprudence, perhaps, but the States do have that right. What they don't have the right to do in a trial is use other crimes evidence where it prejudices the defendant and has no relevance to any of the issues before the Court. And that is the difference, and that's why this trial was unfair. Would you like to save your remaining time? Am I out? We have a minute and 38 seconds. I just wanted to ask the Court briefly to keep in mind the instructional error as well, because on top of that, they have the error of the Court giving the 2.50.01 instruction, which allows sex crimes to be proven on preponderance of the evidence, and that was intertwined with the prosecutor's argument, which I believe alleviated the prosecution from proving guilty under reasonable doubt as well. So there's many, many aspects to this, to the errors here, we believe. Thank you very much. May it please the Court, Peggy Ruffray, for the Respondent, appellee. The only issue on which a COA was granted in this case is whether the evidence of the prior offenses violated due process. Now, the prior offenses were introduced for two separate purposes. One was for propensity evidence, and that was limited only to the sex count that was in this case. So contrary to the argument that that was irrelevant to any issue in this case, there was a sex crime charged here, and that's what the propensity evidence was limited to. And every time the victims of the prior offenses testified, the judge instructed the jury contemporaneously with their testimony that that evidence was limited, as far as propensity goes, to count four, which was the sex crime. So you used to call it the sex crime. Could you be more specific? What was it? It was the forcible oral copulation against Colleen Morales. Which was overturned on appeal? Yes, it was, because of the instructional error. But, of course, we're looking at this from the point of view of going into the trial. And the prosecutor was entitled to use that evidence once the trial court had ruled that it was admissible under Elevens Code, Evidence Code Section 1108. And certainly the question of the evidence is separate from the instruction that was found to be bad later on. But more specifically, the limiting instruction that the judge gave was not simply that bad part of the instruction. The Court specifically said you can only use this as far as propensity goes for purposes of the sex crime. So as far as what they could use it for, the juror's task was clear. He instructed them contemporaneously with the victim's testimony, and again, at the close of evidence. And I'm not even sure the Court can get to that point, because as the questions indicated, it's pretty clear that there's no clearly established Supreme Court authority preventing the use of propensity evidence, which the Court has held in both Alberni and Mejia. So it's our position that you can't even really get further into it. But even if you do, I think it's clear that it was reasonable for the State court to admit that evidence in this particular case. Now, the second reason that the evidence was admitted was under California Code, Section 1101B, which is like the 404 statute. It was admitted to show the defendant's motive, intent, and plan as to the murder and robbery charges. So it was specifically admitted as well for the purpose of the murder count. And the State court found that that was permissible because it manifested his intent, plan, and motive to use force and violence to obtain sex and material possessions for himself, regardless of whether the victim consented or not. So the question then becomes, was that reasonable for the State court to find that the evidence was admissible for that kind of purpose? And this Court has held many times, as has the Supreme Court, that evidence of prior offenses can be relevant, even aside from propensity, but for purposes of showing motive and intent and plan. And that's what it was admitted for in this case. That's what the prosecutor used it for. And I think the argument that his the prosecutor's closing argument used it for something else is a mischaracterization. I've included his entire closing argument in the supplemental excerpts of record. And when you read through that, you see that every time the prosecutor referred to the prior offenses in context of the murder and robbery charges, he said this shows the defendant's motive and intent. He never used it for propensity. He was limiting it to what it was properly admitted for, and there was nothing wrong with that at all. Also, one of the prior offenses didn't even involve a sex offense. One of the prior offenses was simply a robbery at gunpoint. And I haven't seen any distinguishing factor why that wouldn't have been admissible. And finally, clearly, if you find an error here, then any error would be admissible. It would be harmless under the Brecht standard, because the defendant testified. And so the jury was going to hear about those prior offenses. Maybe not the victims would not have testified, but the jury clearly would have known that he had two prior rape offenses and a prior robbery offense, that he was on parole at the time of these offenses. They would have known about all of that. And even aside from that, the evidence, if none of the priors had been admitted, the evidence of his guilt was very strong in this case. His defense was very weak. It was basically, I went out for a walk, and when I came back, this woman with the 28 hammer blows to the head was mysteriously laying in my kitchen. But in fact, he was the one who motive means an opportunity to kill her, and he was the only one who had that. And there wasn't exactly an eyewitness to the crime, but there was an earwitness, the victim, Colleen Morales, that's the sex crimes victim. She was present in the house. She saw him beforehand swinging a hammer. He said, you might want to leave the house, and she declined. And then he said, well, if you're going to stay here, then you might not want to look out the window because I have some business that I have to take care of. And she remained in the house. She heard him talking to the victim, Ms. Redman, when she arrived. She heard them say something about check and money. And in fact, there was animosity between the two of them because the victim was his drug dealer. He had given her a bad check for cocaine, and he was upset because she wasn't selling him very high quality drugs. So there was this history of tension between them. The housemate heard the argument about that. Then she heard the victim being slammed into a wall. She came down and she saw the victim laying there in a bloody mess with 28 hammer blows to her head, and there's the defendant standing there. So really, the evidence was overwhelming of his guilt, even without any of the evidence of the prior offenses. As you analyze the case, we're really talking about a rather mundane issue of relevance rather than some complication of constitutional values set by the Supreme Court or not set by the Supreme Court of the United States? Yes, I would agree with that. Thank you. You have a minute. Do you see the clock there in front of you? That's right. First of all, the Supreme Court in McGuire did indicate that with the introduction of irrelevance, someone fixed the trial, infused the trial with unfairness, so it's a non-due process. It is a constitutional violation. That's in McGuire, Your Honor, at page 75. Second of all, the limiting instruction in this case was totally inadequate to prevent the jury from using this evidence improperly, given the prosecutors telling the jury that they should use it anyway. So the concept of limiting instruction was adequate as it ordinarily might, in and of itself an unreasonable application of the law. Third, the issue that this prior crimes evidence was used under California State section 1101B to show intent, plan or motive, that wasn't the issue in the case. The issue was identity. You can't introduce evidence of intent, plan or motive when the issue is identity. There's no question that someone was trying to kill this person and there was a motive to kill the person. The issue was identity. That's you can't introduce evidence of prior crimes when the issue is identity when you're, as a subterfuge, claim it's for intent, plan or motive. Finally, as far as it being harmless is concerned, I'm quite familiar with the facts of this case because I tried this case 20 years ago in the trial court, and the facts were far more close than counsel claims. The so-called witness who they based their entire case on never told the police what happened, went to work, never called the police that day, put a note up on the door saying don't go into this room, lied to the police repeatedly over the course of four or five days when Mr. Flores was no longer a danger to her. So this was not at all an overwhelming case. But for the prior crimes evidence, this was a very, very close case based on one witness who was very, very unreliable and who had apparently a motive to lie because she had an affair with the defendant. So the fact that he would have testified is also speculative. Had it not been for the admission of the other crime evidence, Mr. Flores may never have testified because the only reason he testified was to explain the other crime's evidence. Furthermore, in California, you don't get into the facts of the case of other crimes evidence. The most they would have heard was the existence of other crimes evidence, the convictions. Those convictions could have been sanitized under California law. So all you hear is that they're crimes of moral turpitude, and it may well have been that the jury would have heard nothing more than Mr. Flores had crimes of moral turpitude, that he was convicted of had he testified, and the facts of these terrible prior crimes with the victims who were emotionally distraught, understandably, of what had occurred to them years earlier, would never have been heard by the jury. This would have been an entirely different trial had there been – had there been a trial that had been construed fairly, and if the trial had only been on the issue of guilt and the oral copulation count had been severed or the prior crimes evidence had not been admitted. Thank you. I appreciate argument from both counsel this morning. The case just argued of Flores v. Adams is submitted.
judges: Wallace, Farris, McKeown